**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO AMERICAN FLOOR SYSTEMS, INC. | : | No. 2:24-mc-00070 |
| UNDERLYING CASES: | : | |
| UNITED STATES GYPSUM COMPANY, a Delaware corporation, Plaintiff, | : | No. 1:22-cv-00268<br>United States District Court for the Northern District of Illinois |
| v. | : | Honorable Jeffery Cummings |
| DEPENDABLE LLC an Ohio limited liability company Defendant. | : | Magistrate Judge M. David Weisman |
| DEPENDABLE, LLC Counter-Plaintiff,<br>v.<br>UNITED STATES GYSPUM COMPANY, Counter-Defendant. | : | |

**BRIEF IN SUPPORT OF AMERICAN FLOOR SYSTEMS, INC.'S CONSOLIDATED MOTION TO DISMISS AS MOOT UNITED STATES GYPSUM COMPANY'S MOTION TO COMPEL COMPLIANCE, MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER REGARDING UNITED STATES GYPSUM COMPANY'S THIRD-PARTY SUBPOENA ISSUED TO AFS ON DECEMBER 11, 2024, AND TO TRANSFER SUCH MOTION TO QUASH TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

American Floor Systems, Inc. ("AFS"), by and through its undersigned counsel, Venzie Construction Law, LLC, submits this brief in support of: (a) its motion to dismiss as moot United States Gypsum Company's ("USG") Motion to Compel Compliance with the Third-Party Subpoena Directed to AFS that was filed in this Court on November 15, 2024 (the "USG

Motion to Compel"); (b) its motion pursuant to Federal Rules of Civil Procedure 26 and 45(d)(3) to quash or modify the third-party subpoena issued by USG on December 11, 2024, directed to AFS, or, in the alternative, for a protective order to prevent USG from enforcing such subpoena (the "AFS Motion to Quash"); and (c) to transfer the AFS Motion to Quash to the United States District Court for the Northen District of Illinois, Docket No. 1:22-cv-00268 (the "Underlying Cases") for adjudication pursuant to Rule 45(f) (the "AFS Motion to Transfer").

## I. PROCEDURAL BACKGROUND

American Floor Systems, Inc. ("AFS") is a Delaware corporation with its principal place of business located at 707 Moore Station Industrial Park, Prospect Park, Pennsylvania. See, *Declaration of Robert Quercetti*, attached hereto as **Exhibit H** at ¶ 1. AFS is not a party in the Underlying Cases, nor does it have any interest in the outcome of that matter. See, **Exhibit H** at 4. USG is the plaintiff in the Underlying Cases.

On July 22, 2024, counsel for USG in the Underlying Cases signed a third-party subpoena directed to AFS issued by the U.S. District Court for the Northern District of Illinois commanding AFS to produce 13 sub-categories of documents at the office of USG's counsel in Chicago, IL (the "July 2024 Subpoena"). A copy of the July 22, 2024 Third-Party Subpoena directed to AFS is attached as Exhibit A of AFS's written objections to the July 2024 Subpoena, a true and correct copy of which is attached hereto as **Exhibit A.** On July 31, 2024, counsel for AFS timely served written objections to the July 2024 Subpoena upon USG's counsel pursuant to Rule 45(d)(2)(B), a true and correct copy of which is attached hereto as **Exhibit A**.

In its written objections AFS raised, among other grounds for objection, that the July

2024 Subpoena was invalid on its face as it required AFS to comply beyond the geographical limits specified in Rule 45(c), was not properly served, and imposes an undue burden upon AFS. See, **Exhibit A**.

On November 15, 2024, USG commenced this miscellaneous action by filing the USG Motion to Compel seeking to compel compliance by AFS with the July 2024 Subpoena. On November 25, 2024, AFS filed a motion for extension of time to file an answer to the USG Motion to Compel on the grounds that in the Underlying Cases, the Northern District of Illinois had entered an Order on the docket contemplating that USG will be filing a motion to transfer the USG Motion to Compel—and the other third-party subpoena enforcement actions it commenced around the country—to the Northern District of Illinois. By Order dated November 27, 2024, this Court granted AFS' motion for an extension of time and allowed AFS until January 28, 2024 to file an answer to the USG Motion to Compel.

On December 11, 2024, Siobhan Cole, Esquire, USG's local Philadelphia counsel, emailed AFS' counsel a new subpoena issued by the Northern District of Illinois, seeking the same 13 sub-categories of documents as the July 2024 Subpoena, but commanding the document production at the offices of White and Williams, LLP - located at 1650 Market Street, Suite 1800, Philadelphia, PA 19103– on December 26, 2024 at 5:00 p.m. (the "December 2024 Subpoena"). A true and correct copy of the December 2024 Subpoena and Ms. Cole's accompanying email is attached hereto as **Exhibit B**. The December 2024 Subpoena requires compliance by December 26, 2024. See, **Exhibit B**. The undersigned is without knowledge as to whether USG served notice of the December 2024 Subpoena upon the parties in the Underlying Cases as required in Rule 45(a)(4). Additionally, the issuing party must file with the issuing court a statement showing the date and manner of service and the names of the persons

served, and that statement must be certified by the server. Fed. R. Civ. P. 45(b)(4). As of the date of the filing of this Consolidated Motion, it does not appear that USG has filed such a certified statement in the Underlying Cases.

## II. The UNDERLYING CASES

On January 21, 2022, USG commenced the Underlying Cases by filing a Complaint in the United States District Court for the Northern District of Illinois against Defendant Dependable, LLC ("Dependable"). A true and correct copy of the Complaint is attached hereto as **Exhibit C**. In the Complaint, USG alleges that it is a manufacturer of gypsum plaster and cement-based construction products, including poured gypsum flooring products, and that Dependable is a distributor of gypsum floor products. See, Complaint, **Exhibit C**, at ¶¶ 11 and 12. USG claims, among other things, that it is owed payment for products under a contract with Dependable. See, Complaint, **Exhibit C**.

On August 25, 2022, Dependable filed an Answer, Affirmative Defenses and Counterclaims against USG in the Underlying Cases, a true and correct copy of which is attached hereto as **Exhibit D**, without exhibits (the "Dependable Counterclaims"). In the Dependable Counterclaims, Dependable alleges that it is a Midwest manufacturer of floor-preparation products including patches and self-levelers and that one of the products Dependable makes and sells to its customers is called GSL K2.6®, a gypsum-cement underlayment. See, **Exhibit D** at ¶¶ 1-2. Dependable alleges that USG's product, which competes with Dependable's GSL K2.6®, is known as Levelrock®. See, **Exhibit C** at ¶ 5. Dependable alleges that nearly all gypsum-cement underlayment products are manufactured by only three companies: USG, Georgia-Pacific ("GP"), and Arcosa. See, **Exhibit D** at ¶ 6.

Dependable also alleges that:

> Dependable works with other manufacturers to meet Dependable's customers' demand. In such situations, Dependable may enter into a private-label agreement, where Dependable will direct another company to manufacture product to Dependable's specifications and to use Dependable's proprietary formulation, or recipe, such that Dependable will then sell the product under its own brand name based on its expectation that the product is consistent with the quality established by the proven mixture that Dependable specifies.

See, **Exhibit D** at ¶ 7.

Dependable alleges that it entered into a "Private Label Agreement" with USG in September 2020 for USG to manufacture Dependable's GSL K2.6® product for Dependable in specific volumes using Dependable's formulation. See, **Exhibit D** at ¶¶ 12-17. Dependable alleges that disputes arose between it and USG, including a dispute over the quality of the GSL K2.6® that USG manufactured for Dependable. See, **Exhibit D** at ¶¶ 17-72.

Dependable also alleges that on December 10, 2021, it informed USG that it would not accept any further shipments of GSL K2.6® from USG, and on December 20, 2021, it informed USG that it was cancelling all of its existing and outstanding purchase orders with USG and would not be accepting any additional material. See, **Exhibit D** at ¶¶ 45-46.

A. Discovery Dispute in the Underlying Cases

Upon information and belief, in July 2024, in the Underlying Cases, USG issued third-party subpoenas to nine customers of Dependable, including the July 2024 Subpoena to AFS, for documents relating to GSL K2.6® manufactured by USG for Dependable (the "Subpoenas"). See, Page 2 of the *Memorandum in Support of Dependable's Opposed Motion for a Protective Order Regarding the Third-Party Subpoenas* filed in the Underlying Cases on December 6, 2024, a true and correct copy of which is attached hereto as **Exhibit E**.

According to Dependable, the Subpoenas, including the July 2024 Subpoena to AFS, seek the following 13 sub-categories of documents:

> Any and all documents in your possession (including correspondence and other communications) involving United States Gypsum Company manufactured GSL K2.6 sold to you by Dependable, LLC, that were generated and/or received by you between September 2020 and present, including but not limited to:
>
> a. any complaints, concerns, issues or challenges with the performance of GSL K2.6
> b. any complaints, concerns, issues or challenges with the aesthetics of GSL K2.6
> c. any representations about GSL K2.6
> d. any product disclosures involving GSL K2.6
> e. any quality disclosures involving GSL K2.6
> f. any price sheets, invoices, purchase orders, order confirmations, cost documents, and shipping documents involving GSL K2.6
> g. the testing or application of GSL K2.6
> h. the storage of GSL K2.6
> i. any disputes with Dependable, LLC
> j. any investigation(s) of defects involving GSL K2.6
> k. any returns, rejections or refunds involving GSL K2.6
> l. the purchase of GSL K2.6
> m. any purchase discounts involving GSL K2.6® including the reasons provided for the discounts.

See, **Exhibit E**, *Memorandum* at p. 3 and at Group Ex. A. According to Dependable, "USG has moved to compel at least five of the nine Subpoena Respondent's compliance with duplicative, burdensome, and invalid subpoenas." See, **Exhibit E**, *Memorandum* at pp. 2-3 (identifying the five pending enforcement actions, including this action against AFS).

On November 19, 2024, in the Underlying Cases, Dependable filed an emergency motion to stay USG's enforcement proceedings against Dependable's customers relative to the third-party Subpoenas issued by USG. On November 24, 2024, the Northen District of Illinois entered the following amended Order in the Underlying Cases denying Dependable's emergency motion without prejudice but contemplating that USG's pending subpoena enforcement proceedings against Dependable's customers in the various district courts around the country

would be transferred to the Northen District of Illinois for adjudication:

> MINUTE entry before the Honorable M. David Weisman: Joint motion to amend minute entry (ECF [164]) [166] is granted. Minute entry [164] is amended as follows: Emergency Motion hearing held. Discussion held regarding Defendants' Emergency Motion to Stay Enforcement Proceedings Against Third−Party Subpoena Recipients [159]. Defense counsel withdraws the motion; motion [159] is withdrawn without prejudice. Plaintiffs will file motions to transfer to this Court the motions to enforce subpoenas pending in other districts. Assuming transfer occurs, Defendants will file in this Court any motions for protective orders by 12/6/24 and Plaintiffs to respond by 12/20/24. Ruling on motion set for 1/13/25 at 10:00 a.m. Court will notify the parties if it expects oral argument at the hearing. Plaintiffs shall promptly contact the Courtroom Deputy, Alyssia_Owens@ilnd.uscourts.gov, if any issues arise with the motions to transfer.

A true and correct copy of the November 24, 2024 amended Order of the U.S. District Court for the Northern District of Illinois is attached hereto as **Exhibit F**.

In accordance with the Court's amended Order, on December 6, 2024, Dependable filed its *Opposed Motion for a Protective Order Regarding the Third-Party Subpoenas* and accompanying *Memorandum in Support* in the Underlying Cases. See, **Exhibit E** ("Dependable's Motion for Protective Order"). In its Motion for Protective Order, Dependable seeks to prevent USG from enforcing the Subpoenas directed to Dependable's current and former customers, including AFS, on several grounds, including on the grounds that Dependable has already provided the information sought in the Subpoenas to USG and is attempting to harass Dependable's customers. See, **Exhibit E**, *Memorandum* at 2-3 and 8-10.

Dependable maintains that it produced to USG "more than 6,000 documents on the topics requested in the Subpoenas." See, **Exhibit E**, *Memorandum* at 3. Dependable further addressed the documents sought in the Rider to the Subpoenas:

> As noted above, USG requests *any and all* "documents… involving United States Gypsum Company manufactured GSL® K2.6 sold to

> [Subpoena Recipients] by Dependable, LLC" and lists a number of examples in subsections. (Ex. A.) These subsections are identical to the requests for production USG issued to Dependable, as well as subsequent agreements regarding the scope of Dependable's document production. In other words, USG has already asked Dependable—*and Dependable has already produced*—documents USG seeks to obtain from the Subpoena Respondents. USG has not identified any deficiency in Dependable's production that it seeks to cure through these Subpoenas. Notably, even if USG *had* identified a deficiency in Dependable's production, that "does not demonstrate a compelling need to seek duplicative third-party requests[.]" *Tresona Multimedia, LLC*, 2015 WL 4911093, at *3 (citing to *See In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *4 (N.D. Ill. May 13, 2011) (granting third-parties' motion to quash a subpoena because other reasonable sources existed for the plaintiff to obtain the information via document requests to the defendants in the underlying action for the same information went unanswered)).

See, **Exhibit E**, *Memorandum* at 8-9.

Just recently, on December 18, 2024, in the Underlying Cases, the Northern District of Illinois entered another Order contemplating that the third-party subpoena enforcement actions will be transferred to the Northern District of Illinois. Such Order states in pertinent part:

> Magistrate status hearing held. Discussion held as to status of third-party subpoenas and pending transfers to this Court. Plaintiff is working with third-party counsel to expedite transfer of subpoenas. Dependable will file updated motions for third-party protective orders after transfer. Plaintiff will provide notice to Defendant of when subpoenas are issued as well as administrative information as to the assignment of cases and their transfer status. Status report due by COB on 12/30/24 setting forth the status of third-party subpoenas and, of those that have been transferred to this Court, listing any new case numbers in this district. As to subpoena riders, subject to meet and confer requirements of Local Rule 37.2, Dependable shall file one motion for protective order as to all subpoenas, except for Advanced Building Product, as to which a separate motion will be filed. Discussions ongoing about privilege logs….

A true and correct copy of the Northern District of Illinois' December 18, 2024 Order is attached hereto as **Exhibit I**.

## III. ARGUMENT

### A. USG's Issuance of the December 2024 Subpoena to AFS Renders the USG Motion to Compel Moot

On December 11, 2024, after having filed the USG Motion to Compel relative to its patently invalid July 2024 Subpoena commanding compliance in Chicago, IL—well over 100 miles from AFS' principal place of business in Prospect Park, PA[1]—USG decided to issue the December 2024 Subpoena to AFS from the Northern District of Illinois in the Underlying Cases, this time commanding production of the same documents sought in the July 2024 Subpoena at USG's local counsel's offices in Philadelphia by December 26, 2024.

In light of USG's issuance of the December 2024 Subpoena seeking the identical 13 sub-categories of documents as the invalid July 2024 Subpoena, USG's Motion to Compel, which solely addresses the July 2024 Subpoena, is moot and should be dismissed, as the operative subpoena now is the December 2024 Subpoena.

### B. AFS Requests That the Scope of the December 2024 Subpoena Be Modified to the Time Period of September 2020 through December 2021

The right to subpoena any person to produce documents is not limitless; Rule 45 provides several protections. The party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1).

> [A] subpoenaed nonparty may…seek to have it quashed by filing a motion with the issuing court. Rule 45(d)(3)(A) describes when a court *must* quash or modify a subpoena, such as when a request "subjects a person to undue burden." Rule 45(d)(3)(B) and (C) describe when a court *should* quash or modify a subpoena, unless the subpoenaing party can show a substantial need for the requested

[1] A subpoena issued pursuant to Rule 45 may only command production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c).

> material and the court can specify conditions of production that accommodate the interests of the subpoenaed nonparty. Material protected under Rule 45(d)(3)(B) includes "a trade secret or other confidential research, development, or commercial information" or "an unretained expert's opinion or information that does not describe the specific occurrences in dispute and results from the expert's study that was not requested by a party."

In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 238–39 (E.D. Pa. 2014) (citations omitted).

Under Rule 26(c), it is clear that "for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (1) that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). The Court has discretion to decide when a protective order is appropriate and what degree of protection is required. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

As in the July 2024 Subpoena, the December 2024 Subpoena commands the production of 13 sub-categories of documents relating to GSL K2.6® that USG manufactured for Dependable that Dependable sold to AFS. Specifically, the "Rider" attached to the December 2024 Subpoena seeks the following documents:

> Any and all documents in your possession (including correspondence and other communications) involving United States Gypsum Company manufactured GSL K2.6 sold to you by Dependable, LLC, that were generated and/or received by you between September 2020 and present, including but not limited to:
>
> a. any complaints, concerns, issues or challenges with the performance of GSL K2.6
> b. any complaints, concerns, issues or challenges with the aesthetics of GSL K2.6
> c. any representations about GSL K2.6
> d. any product disclosures involving GSL K2.6
> e. any quality disclosures involving GSL K2.6

f. any price sheets, invoices, purchase orders, order confirmations, cost documents, and shipping documents involving GSL K2.6
g. the testing or application of GSL K2.6
h. the storage of GSL K2.6
i. any disputes with Dependable, LLC
j. any investigation(s) of defects involving GSL K2.6
k. any returns, rejections or refunds involving GSL K2.6
l. the purchase of GSL K2.6
m. any purchase discounts involving GSL K2.6 including the reasons provided for the discounts.

<u>See</u>, **Exhibit B**.

In light of the fact that Dependable ceased purchasing and accepting GSL K2.6® from USG in December 2021, any electronic or hard copy documents in AFS' possession relating to AFS' purchases of GSL K2.6® from Dependable **after December 2021** (*i.e.,* purchase orders, invoices, order confirmations, shipping documents) would not involve GSL K2.6® manufactured by USG. With respect to any GSL K2.6® that AFS purchased from Dependable that may have been manufactured by USG, Robert Quercetti, President of AFS, does not recall any customers of AFS having any issues, complaints or concerns involving GSL K2.6® purchased from Dependable that may have been manufactured by USG. See, **Exhibit H** at ¶6. Nor does Mr. Quercetti recall any issues or complaints from AFS' customers with the performance of GSL K2.6® that may have been manufactured by USG. See, **Exhibit H** at ¶6. Mr. Quercetti does not recall any returns, rejections, refunds or purchase discounts involving any GSL K2.6® that AFS had purchased from Dependable in the September 2020 through December 2021 time frame. See, **Exhibit H** at ¶6. Thus, any documents in AFS' possession relating to GSL K2.6® that AFS purchased from Dependable **after December 2021** have no relevance to the Underlying Cases, which only involves GSL K2.6® that USG manufactured for

Dependable.[2]

> The serve-and-volley of the federal discovery rules govern the resolution of a motion to quash. The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1).

In re Domestic Drywall Antitrust Litig., 300 F.R.D at 239 (citations omitted) (quotations omitted).

> Federal Rule of Civil Procedure 26 sets forth the general scope of discovery in civil suits: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed. Discovery requests may be curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Id. at 238 (citations omitted) (quotations omitted).

To protect AFS from having to produce documents in its possession that are not relevant to the Underlying Cases, *i.e.,* that involve GSL K2.6® that AFS purchased from Dependable **that was not manufactured by USG**—which would be AFS' purchases of GSL K2.6® from Dependable from January 2022 to the present—AFS requests that the Court modify the scope of the December 2024 Subpoena to documents relating to AFS' purchases of GSL K2.6® from Dependable between September 2020 and December 2021.[3] However, it is important to point

[2] In the USG Motion to Compel—directed at the July 2024 Subpoena which requested the exact same 13 sub-categories of documents as the December 2024 Subpoena—USG stated that in its July 2024 Subpoena "USG is narrowly seeking information related to AFS' relationship with Dependable, LLC in connection with GSL K2.6 manufactured by USG, to rebut Dependable's contention that USG's GSL K2.6 was defective and therefore justified Dependable in not paying USG for the same…This information is directly relevant to the parties' claims and defenses." See, the USG Motion to Compel filed in this miscellaneous action on November 15, 2024, a true and correct copy of which is attached hereto as **Exhibit G**.

[3] Mr. Quercetti's email inbox does not contain any email (from Dependable or otherwise) prior to August 2023 due to past computer problems and subsequent computer system upgrades and changes that AFS has made. See, **Exhibit H** at ¶ 7. AFS has purchased GSL K2.6® from Dependable between September 2020 and the present, however, any

out that even with that time period modification, AFS has no way of knowing or determining based on the documents relating to the purchase of GSL K2.6® from Dependable (i.e., purchase orders, invoices, order confirmations or shipping documents), whether a given purchase of GSL K2.6® purchased from Dependable between September 2020 and December 2021 was sourced from USG or another one of Dependable's suppliers. See, **Exhibit H** at ¶ 13.

In addition, purchase documents relating to AFS' purchases of GSL K2.6® from Dependable, such as purchase orders, invoices and order confirmations, contain pricing information that AFS considers confidential commercial information. It is AFS' understanding that USG has connections with, and sells material to, AFS' direct competitors. See, **Exhibit H** at ¶ 14. The material pricing that Dependable extends to AFS is confidential and proprietary as the bids that AFS provides to its customers is based, in part, of such material pricing. See, **Exhibit H** at ¶ 14. If such material pricing were obtained by AFS' direct competitors subsequent to AFS' production of such information to USG, AFS' competitors would gain an advantage over AFS in terms of bidding to customers and could result in economic harm to AFS in terms of lost revenue. See, **Exhibit H** at ¶ 14. This potential competitive disadvantage and economic harm can be avoided by restricting the scope of the December 2024 Subpoena to the time period of September 2020 through December 2021.

There is also the legitimate question of whether USG can show a "need" for documents from AFS. Dependable maintains in its Motion for a Protective Order that USG has requested the same documents from Dependable in discovery in the Underlying Cases and that Dependable has produced such documents to USG. If that is accurate, a nonparty such as AFS should not

---

documents that AFS did receive from Dependable via email since August 2023 relating to GSL K2.6®, such as invoices, purchase orders and order confirmations, would not involve GSL K2.6® manufactured by USG. See, **Exhibit H** at ¶ 8.

have to produce duplicates of documents that USG already possesses that could potentially put AFS at a competitive disadvantage. Nor should AFS have to divert its sparce human resources to redact confidential commercial information from documents that USG already possesses. See Fed. R. Civ. P. 26(b)(2) (permitting court to limit discovery where discovery "is obtainable from some other source that is more convenient, less burdensome, or less expensive"); see also, Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 977 (Fed. Cir. 1993) (requiring party to seek discoverable material from party opponent prior to commencing ancillary proceeding against nonparty for purposes of obtaining relevant documents); First Aviation Servs. v. Gulf Ins. Co., 205 F.R.D. 65, 69 (D. Conn. 2001) (denying motion to compel production of documents against third party because defendant possesses documents sought by plaintiff).

The modification of the applicable time period in the December 2024 Subpoena—from September 2020 to the present, to September 2020 through December 2021—can alleviate the aforementioned burden upon AFS of producing irrelevant documents involving GSL K2.6® that was not manufactured by USG and of producing confidential pricing information.[4]

### C. Production of AFS' Hard Copy Files Will Impose an Undue Burden Upon AFS

AFS stores its hard copy files going back seven years in boxes in its offices. See, **Exhibit H** at ¶ 10. Those archived boxes contain, among other things, hard-copy printouts of invoices, purchase orders, order confirmations, shipping documents and possibly email correspondence

[4] AFS' other office employees have electronic documents and email from Dependable from September 2020 to the present, namely, email, purchase orders, invoices and order confirmations. AFS will produce the purchase orders, invoices and order confirmations that it possesses in electronic format during the period between September 2020 and December 2021 without requesting a protective order to restrict dissemination of the pricing information in such documents as the age of those documents does not pose a risk of economic harm to AFS. However, in the event the Court decides to require the production of such documents between December 2021 and the present, AFS requests that the Court enter a protective order restricting the dissemination of such documents and their contents to persons other than USG's attorneys with a "For Attorneys' Eyes Only" designation and protecting the confidentiality thereof.

with Dependable for 2020, 2021 and 2022 (AFS' 2023 documents are currently in file cabinets that will soon be boxed). See, **Exhibit H** at ¶ 10.

AFS has three office employees, Mr. Quercetti and two support staff. See, **Exhibit H** at ¶ 5. AFS' office employees have purchase orders, invoices and order confirmations relating to Dependable from September 2020 to the present in electronic form. See, **Exhibit H** at ¶ 9. However, AFS does not know if the support staff's electronic documents contain **all** of the purchase orders, invoices and order confirmations relating to Dependable from September 2020 to the present. See, **Exhibit H** at ¶ 9. The possibility exists that there are hard copies of additional purchase orders, invoices and order confirmations relating to Dependable, in the boxes.

Searching those boxes for responsive materials would be a manual and time-consuming task. See, **Exhibit H** at ¶ 11. Given that AFS is a three-person business, to do so would require diverting critical personnel away from AFS' business to manually review documents in boxes and would cause AFS serious business disruption. See, **Exhibit H** at ¶ 11. Mr. Quercetti estimates it would take one employee about one business week to review all of the boxes currently in storage at AFS. See, **Exhibit H** at ¶ 12. This does not even take into consideration the time to scan the documents found—which documents may even be duplicative of the version in electronic form—and prepare them for production to USG. See, **Exhibit H** at ¶ 12. That burden, in conjunction with the fact that AFS cannot discern from the purchase-related documents themselves whether they relate to GSL K2.6® purchased from Dependable that was manufactured by USG, supports a finding that AFS will be unduly burdened if required to search its hard copy files in order to comply with the December 2024 Subpoena.

Accordingly, AFS requests that the Court enter a protective order relieving AFS from searching any of its hard copy files whether in boxes or currently in file cabinets. AFS notes that any "shipping documents" requested in Item 1(f) of the December 2024 Subpoena would be in hard copy format and would require the same search of the boxes and file cabinets as described above. AFS submits that the shipping documents, such as bills of lading, have no probative value given it cannot be discerned from them whether a delivery of GSL K2.6® purchased from Dependable was manufactured by USG, and therefore does not warrant the undue burden such search would impose on AFS.

**D. <u>Items 1(c), (d) and (e) Are Overbroad and Vague and Should Be Quashed</u>**

Item 1(c) requests "any and all documents in your possession" involving "any representations about GSL K2.6". On its face, this request is overbroad and lacks particularity as the word, "representation" could theoretically capture everything set forth in writing—more indicative of a "fishing expedition"—and was clearly not tailored to discover evidence "to rebut Dependable's contention that USG's GSL K2.6 was defective and therefore justified Dependable in not paying USG for the same" as USG alleges in its Motion to Compel was the purpose of the July 2024 Subpoena, which is identical to the December 2024 Subpoena.

USG makes no attempt to set forth the parameters of the "representations" that it seeks insofar as the speaker/author, the aspects of GSL K2.6 that USG seeks "representations" about, or the context in which the "representations" USG seeks were made. As written, Item 1(c) could capture every document in AFS' possession relating to its purchase of GSL K2.6 from Dependable. AFS requests that the Court quash Item (c) given it is overbroad and vague and will impose the undue burden upon AFS of searching the numerous boxes of hard copy documents in storage and in its file cabinets and will necessarily encompass and require the production of

irrelevant documents (*i.e.,* documents relating to the purchase of GSL K2.6 from Dependable manufactured by sources **other than USG** because AFS cannot discern from the documents themselves who manufactured a given order of GSL K2.6 purchased from Dependable).

AFS also moves to quash Items 1(d) and (e), which are patently vague in that they seek "product disclosures" and "quality disclosures", respectively, involving GSL K2.6. USG does not define these terms in the December 2024 Subpoena nor does USG specify the author of the disclosures that it is seeking. These requests, if permitted to stand, will require AFS to review all of its documents from Dependable simply to see if any could possibly constitute a "product or quality disclosure" without knowing to what those terms are intended to refer. Is USG requesting disclosures by Dependable? If so, has USG sought and received such disclosures from Dependable—its party opponent—in discovery in the Underlying Cases? As previously discussed, Dependable maintains that it produced documents to USG in the Underlying Cases in response to the same requests set forth in the December 2024 Subpoena. As such, this request is oppressive, lacks particularity and will force AFS to search for an undefined needle in a haystack, when USG's party opponent is the likely author of the documents they seek.

For the above reasons, AFS requests that the Court quash Items 1(c), (d) and (e).

**E. Item 1(g) Should Be Quashed**

Item 1(g) seeks documents involving "the testing or application of GSL K2.6" manufactured by USG. While AFS does take test cubes of the underlayment it installs on some projects, it cannot determine which projects it installed GSL K2.6® that was manufactured by USG. See, **Exhibit H** at ¶¶ 15 and 16. As previously explained, AFS cannot determine from the documents relating to the purchase of GSL K2.6® from Dependable whether a specific purchase of GSL K2.6® was manufactured by USG or another source. Given that, AFS has no way

knowing which projects it used GSL K2.6® from Dependable that was manufactured by USG, and consequently, no way of determining from the purchase-related documents whether any testing that AFS may have had done on a given project involved testing GSL K2.6® from Dependable that was manufactured by USG. See, **Exhibit H** at ¶ 16. In short, any testing documents that AFS may possess cannot be traced to GSL K2.6® that was manufactured by USG.

In addition, test results are emailed to Mr. Quercetti. See, **Exhibit H** at ¶ 15. Mr. Quercetti currently only possesses email back to August 2023. See, **Exhibit H** at ¶ 7. None of the test results that Mr. Quercetti has from August 2023 to the present involve projects on which AFS used GSL K2.6 from Dependable that may have been manufactured by USG. See, **Exhibit H** at ¶ 15. Accordingly, AFS requests that the Court quash Item 1(g) on the grounds that such request would only yield test results that are irrelevant to the Underlying Cases.

Furthermore, the request in Item 1(g) for documents involving the "application of GSL K2.6" is undefined, vague and lacks the particularity and specificity necessary to enable AFS to perform purposeful search for a specific type of document. AFS requests that this request also be quashed to alleviate the burden of "guessing" at what USG means by use of the term "application".

### F. AFS Moves to Transfer Its Motion to Quash, or, In the Alternative for a Protective Order, to the Underlying Cases in the Northern District of Illinois Under Rule 45(f)

Rule 45(f) provides that, "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The November 24, 2024 and December 18, 2024 Orders entered by the Northen District of Illinois in the Underlying

Cases, discussed on pp. 7-8, *supra*, contemplates that USG would be filing a motion to transfer this miscellaneous action—and the other enforcement actions that it commenced around the country—to the Northern District of Illinois. To date, USG has not done so, however, AFS hereby moves for such transfer and consents thereto. The Northen District of Illinois is currently overseeing discovery in the Underlying Cases and is in the best position to consider issues of relevancy and USG's need for the documents sought in the December 2024 Subpoena, particularly given Dependable's position that it has already produced to USG the documents sought in the December 2024 Subpoena. In addition, Dependable's Motion for a Protective Order relating to USG's Subpoenas to Dependable's customers, including AFS, is pending in the Underlying Cases and Dependable has the right to file an updated motion for protective order per the December 18, 2024 Order of the Northen District of Illinois. Accordingly, AFS moves the Court to transfer its Motion to Quash to the Northen District of Illinois in the Underlying Cases.

## IV. RELIEF SOUGHT

AFS respectfully requests that this Court dismiss the USG Motion to Compel as moot and enter an order transferring AFS' Motion to Quash to the Underlying Cases in the Northern District of Illinois.

VENZIE CONSTRUCTION LAW, LLC

Date: December 23, 2024

By: /s/ Jeffrey C. Venzie
JEFFREY C. VENZIE
I.D. No. 78216
jeff@venzielaw.com
600 Eagleview Boulevard, Suite 300
Exton, PA 19341
(T): (484) 359-7323

*Attorneys for American Floor Systems, Inc.*